THE STATE *ex rel.* W. C. SCOTT *v.* THE NASHVILLE, CHATTANOOGA & ST. LOUIS RAILROAD CO.

1. RAILROADS. *Lien of the State.* The lien of the State on railroads for the security of bonds loaned under the internal improvement laws of 1851–2, is superior to the rights of the holders of tax certificates under the act of 1851–2, ch. 117, providing for county subscriptions and making said certificates receivable for freight and passage over the road.

2. SAME. *Same. Purchaser of State's interest.* A purchaser of the road or the State's interest therein, under the sale ordered by the chancery court at Nashville in pursuance of the act of 21st December, 1870, is not bound to receive such certificates for freight or passage on the road.

FROM WEAKLEY.

Appeal in error from the Circuit Court of Weakley county. C. ADEN, J.

M. D. CARDWELL, C. M. EWING and CAMPBELL & JACKSON for Scott.

J. A. GARDNER for Railroad Co.

MCFARLAND, J., delivered the opinion of the court.

This is a petition for *mandamus* to compel the officers and agents of the "Nashville, Chattanooga & St. Louis Railway Co." to receive from the relator a certain tax certificate or receipt in payment for freight and passage over that part of their road formerly belonging to the "Nashville & Northwestern Railroad Company."

The averments of the petition are, that under the act of 1851-2, ch. 117, the county of Weakley, in the mode therein provided, subscribed for stock in the Nashville & Northwestern Railroad Company, and the certificate in question was given by the tax collector to one of the taxpayers of the county for a payment of an instalment of his taxes to meet the subscription; that the certificate is by law made receivable for freight or passage over the road after the expiration of one year, and is also assignable, and that the relator is the owner of the one presented; that the road is now being operated by the Nashville, Chattanooga & St. Louis Railway Company, a different corporation from the original; that said company claims under proceedings had in the chancery court at Nashville, instituted and carried out in pursuance of certain acts of the Legislature of the 21st December, 1870, for the purpose of enforcing the lien of the State upon certain delinquent railroads, to which the credit of the State had been loaned in bonds; that the agents of the defendant have refused to receive said certificate upon tender for passage and freight. It is insisted that the rights of the relator in regard to the certificate in question are the same that existed against the original company, and that the present operators of the road are bound to receive the certificate in payment of freight or passage, in accordance with the original act.

The case has been very ably and very learnedly argued, both orally and in written briefs and arguments filed. It is unnecessary to set forth in detail

all the provisions of the act of 1851–2, under which the subscription by Weakley county was made. It provides the manner in which the question of subscription shall be brought before the voters of the county, and how the election shall be held. If the requisite majority be had in favor of the subscription, the judge or chairman of the county court is directed to make the subscription in the name of the county. A tax is to be levied to meet the subscription by instalments, a tax collector appointed and tax lists made out and furnished him. He is required, as he receives the taxes from each taxpayer, to give to him a certificate in such form as the railroad company may prescribe, showing the amount of tax paid, of which certificate a duplicate is to be retained and delivered to the president of the company, and such certificate is negotiable by delivery or assignment, and is "receivable in payment of either freight or passage" on the road in which the subscription is taken, after one year from the completion of the road. It is further provided that the holder of such certificates to the amount of one share or more of stock in the company, is entitled to demand a certificate of stock in lieu of his tax certificates, and such certificate of stock shall entitle him to all the privileges of any other stockholder. The county is authorized to appoint a proxy to represent the stock so subscribed, in all meetings of the stockholders.

The same session of the Legislature passed what is known as the general internal improvement law, which in substance provides for issuing bonds of the

State in aid of railroads in the State, which bonds are by the act made a specific lien upon the roadbed, right of way, grading, bridging and masonry, upon all the stock subscribed to such road, and upon the iron rails, chairs, spikes and equipments when purchased, the State being vested with a lien without any conveyance, as a security for the payment of the bonds issued. The act further provides that the companies receiving the bonds shall provide for the payment of the semi-annual interest on the bonds, and also for a sinking fund after a given time, and failing to do so, the State was authorized to place the road in the hands of a receiver and apply the income or net earnings to the purposes aforesaid. It is not necessary to set forth this act with more accuracy or in greater detail, the foregoing being sufficient at present for the purposes of the case.

Nor is it necessary to set forth in detail the legislation under which the delinquent roads of the State, including the Northwestern road, were sold. These proceedings, as well as the laws above referred to, are familiar to the profession and courts. It is sufficient to say that a number of railroad companies to whom State aid had been granted were largely in arrears for interest on the bonds loaned them, and the condition of the roads were such as to make it impracticable for them to be operated by a receiver, except at great losses to the State.

The first act provided for the appointment of commissioners on the part of the State to negotiate a sale of the State's interest in the roads. This act not

proving effectual, a subsequent one was passed, which authorized a general bill to be filed in the chancery court at Nashville against all the delinquent roads, and specifies how defendants are to be made to said bill, and the proceedings therein to be had, and empowers the court to pronounce all decrees necessary for a sale of the State's interest in the roads, and to adjudge and declare the title of the purchaser and the rights of all the other parties in interest, including creditors and stockholders.

The petition avers that the court by its decree adjudged the lien of the State to be superior to the rights of all other persons; that a decree of sale of the "Nashville & Northwestern" road was reported to the court, but the election was reserved to the purchasers to say whether they would elect to hold simply the State's interest in the road or the absolute property and franchises of the company, and that although the sale was confirmed, the election was never made. The defendants hold under this purchase.

We agree with one of the counsel for the relator, that a controlling question in the case is, whether or not the lien of the State reserved in the act of 1851–2 is or is not superior to the rights of the holder of the tax certificate.

The whole argument for the relator on this theory assumes that the State's lien is not superior, and further, that the present holders of the road are not absolute owners of the property and franchises of the old company, but simply holders of the State's interest in the road; that is to say, they stand precisely in

the attitude of a receiver for the State under the original act, and it is assumed that if the receiver were in possession he would be compelled to accept the tax certificate in question. The case being before us alone upon the petition, we can only determine the title of the defendants upon its statements; but in our view of the case it may, for the argument, be conceded that the defendants only hold the State's interest in the road.

It is further argued that the holders of the tax certificates are not bound by the adjudication referred to, holding the State's lien to be superior to all other rights, because neither they nor any of their class were made defendants to the bill.

Waiving the effect of the adjudication and considering the question as unaffected thereby, what is the result? We have endeavored to carefully consider the able and ingenious arguments presented to show the superior rights of the holders of the tax certificates, but the ground upon which this conclusion is sought to be established has not been made manifest.

If the holders of the tax certificates occupy the attitude of *stockholders,* then we do not understand counsel to deny the superior rights of the State; if, on the other hand, they are general creditors of the company, it is as readily conceded that their rights are, in that view, subordinate to the State. It is not affirmed— or at least we do not so understand the arguments— that they have any specific lien upon the property, indeed it could not be. What, then, is the nature of their right? While counsel have ingeniously argued

in support of their conclusion, they have found it difficult to place the claim upon tangible ground, or, in the language of the brief, to "formulate the nature of the claim." It is suggested that the obligation of the old company is analogous to covenants running with land, and therefore the defendants, as the present holders of the road, are bound to perform the covenant. It is unnecessary to enter into a discussion of the doctrine referred to. We think it has no application to the present question.

By the subscription under the provisions of the act of the Legislature referred to, the county became a stockholder in the company for the amount subscribed, and entitled to the rights of other stockholders, so long as it remained the owner of the stock. The act, however, gave to any taxpayer of the county, or the holder of any of the tax certificates to the amount of one share or more of the stock of the railroad company, the right to convert his interest in the stock of the county to an individual share or shares of stock in the railroad company; this would necessarily reduce to that extent the amount of stock owned by the county. The act, however, further gives to the holders of the tax certificates the option to convert them into debts against the company, with the right to have them paid by freight or passage over the road. While suffered to remain as stock in the name of the county, for the benefit of all the people, it is clear that no other or different rights existed in respect to such stock than such as pertained to any other stock of the company, and when any portion of the amount

should have been converted into individual stock, the holder would stand on no higher ground.

When, therefore, the tax certificates are tendered in payment of freight or passage, it is in effect converting what was before stock, into a debt dischargable in this form. It is true it is not in terms denominated a debt, nor does the demand have all the characteristics of a debt, for the railroad company is not liable to pay the amount in money, nor is it liable to suit as upon a money demand. In this respect the holder of the certificate does not stand upon as high ground as a general creditor. The obligations of the railroad company, however, in respect to these certificates, stood upon no higher or different ground than its obligations to other creditors or stockholders, except that when presented in payment of freight or passage the company was bound to receive them. It was an obligation to be performed by the original company, and in no way adhered to or followed its property. The language of the act, that the certificates "are receivable for freight or passage over the road on which the subscription was made," does not make the obligation a lien or incumbrance upon the road itself. It seems to us, therefore, clear that the lien of the State which is expressly retained upon all the property and upon all the *stock*, and is admitted to be superior to the claims of general creditors, is likewise superior to the rights of the holders of these certificates, no matter in what form presented; and if a receiver of the State were in possession under the original act, he would not be compelled to receive the

The State *ex rel. v.* Railroad Company.

certificates in payment of freight or passage over the road—at least not until the income of the road had satisfied the demands of the State for interest and sinking fund. And this being so, then in the most favorable aspect that can be assumed for the relator, it is admitted that his case fails, for the petition does. not aver that the net income received by the defendant has more than satisfied the amount due the State.

The fact that county subscriptions operate as compulsory upon the minority of the voters, cannot change the principle. Whatever may be said in regard to such subscriptions, the courts have sustained them, and in legal effect they stand like any other subscription.

It is again argued, however, that the right of the holders of the certificates to have them taken up in this form is sustained by the provisions of the Constitution, which provide that no man's property shall be taken for public use without just compensation, and the case of *Whidbea White* v. *The Nashville & Northwestern Railroad Co.*, 7 Heis., 518, is relied upon. That case held, in substance, that where a railroad company had appropriated the soil of another for its roadbed, without having made compensation, that a purchaser or holder of the road under the first company could acquire no higher right and could not continue the use of the land without making compensation.

This principle does not apply here. The relator has no interest in or title to any part of the land over which the road runs, or to any other part of the property now in the possession of the defendant.

He simply stands in the shoes of one of the taxpayers of Weakley county, having an interest in the stock subscribed in the name of the county. The courts have held that in the stock subscribed and paid in, such compensation was received as is sufficient to sustain the subscription, although it was · compulsory upon the minority of the voters of the county. If the stock prove in the end to be of no value, they only share the fate of other stockholders.

The next position assumed in one of the briefs filed is, that the defendant company is operating the road under the charter of the old company, not as purchasers of the franchise for value, because the State had no lien on the franchise and the same was not sold, but the present company is exercising the franchise simply by the consent of the Legislature, and therefore it must exercise the franchise precisely as the old company might have done and not otherwise, and authorities are referred to, to show that in such cases the new company is bound by the charter rates for freight or passengers and other similar charter provisions. Hence it is argued that the requirement on the old company to receive these certificates, was in the nature of charter stipulations as part of the franchise which the new company must exercise in the mode required of the old company.

It is true that the Legislature not having granted any different privileges or franchises to the present company, must be taken to have assented to its exercising the franchises of the old company in running and operating the road, and therefore the present com-

pany cannot exercise any other or different privileges or franchises. But the franchise is the right given as against the general public. The liability of the old company to its creditors and stockholders was not one of its franchises, which the new company is now exercising. This argument, though very ingenious, if carried out to its legitimate result, would fasten all the liabilities of the old company upon the new, simply because it is now operating the road under the original charter. The obligation of the company to its creditors or stockholders is not a franchise.

Stress is laid in argument upon the remark of Judge Nicholson, in *Wisdom* v. *Mobile & Ohio R. R. Co.*, 5 Heis., 125, to the effect that the act of 1851-2, authorizing county subscriptions, became part of the charter of the railroad companies to which the subscription was made. This was said in answer to the objection that the company was not authorized to receive such subscriptions; but if true, even in a general sense, that act is no more a part of the charter than the general internal improvement act of the same session, under which the lien of the State was reserved and made superior to all others.

Other questions have been ably argued, but in our view it is not necessary to consider them.

We are of opinion that there is no error in the judgment of the circuit court dismissing the petition, and it will be affirmed.